# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| RODNEY DOGGETT, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-0575 (RBW) |
| | ) | |
| ALBERTO GONZALES, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM  OPINION

This matter is before the Court on defendants' motion to dismiss the complaint and plaintiff Russell Kaemmerling's motion for release on bond pending resolution of this action. For the reasons set forth below, the former motion will be granted and the latter will be denied.

## I.  BACKGROUND

Plaintiffs are federal prisoners whose prison sentences were imposed under the then mandatory United States Sentencing Guidelines ("Guidelines").  *See* Complaint ("Compl.") ¶¶ 1, 12-13.  According to plaintiffs, their sentences are enhanced based on "conduct that was not charged and proven beyond a reasonable doubt."  *Id.* ¶ 16.  They allege that subsequent decisions of the United States Supreme Court have declared the Guidelines unconstitutional, and accordingly, "the sentences imposed pursuant to them are illegal."  *Id.* ¶ 8.  They further contend that their efforts to have these purported illegal sentences corrected are thwarted by the restrictive procedural bars set forth in the Anti-terrorism and Effective Death Penalty Act of 1996

("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996).[1]  *See id.*  ¶¶ 18-19, 22-26.  These restrictions, plaintiffs contend, not only deny them access to the courts but also deprive them of rights protected under the Privileges and Immunities Clause of the United States Constitution, and the First, Fourth, Fifth, and Sixth Amendments of the United States Constitution.  *See id.* ¶¶ 3, 34, 36-37.

In addition, plaintiffs allege that defendants Sensenbrenner and Apperson engaged in a conspiracy to violate plaintiffs' rights by "interfering in the process of court action through intimidation."  Compl. ¶ 74.  Overt acts allegedly perpetuated in furtherance of this conspiracy include a letter defendant Sensenbrenner wrote to a court in an effort "to influence the court in U.S. v. Rivera, 411 F.3d 864 (7th Cir. 2005)."  *Id.* ¶ 76.   Lastly, plaintiffs allege that defendants Alberto Gonzales and a component of the United States Department of Justice, the Executive Office for United States Attorneys, "fail[ed] to prevent the above-stated conspiracy."  *Id.* ¶ 79.

Plaintiffs purport to bring this civil rights action under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), on behalf of a class of similarly situated prisoners, Compl. ¶¶ 82-85, and they demand monetary damages, and "all other relief, legal and equitable, this Court deems appropriate and just."  *Id.* ¶ 95.

## II.  DISCUSSION

Defendants move for dismissal of plaintiffs' Complaint on three grounds: (1) that the Court lacks subject matter jurisdiction, (2) that service of process is insufficient, and (3) that the complaint fails to state a claim upon which relief may be granted.  *See* Memorandum of Points

---

[1]     Among other things, the AEDPA imposes a one-year statute of limitations on the filing of a motion to vacate, set aside, or correct a sentence.  *See* 28 U.S.C. § 2255 (1996).

and Authorities in Support of Defendants' Motion to Dismiss Plaintiffs' Complaint ("Defs.'

Mem.") at 5.

### A. Service of Process on Defendants in their Individual Capacities

Defendants move for their dismissal from the case on the claims filed against them in

their individual capacities for plaintiffs' failure to effect service properly. *See* Defs.' Mem. at 14-

16. The Federal Rules of Civil Procedure require that in an action brought in this district, service

of process on an employee or officer of the United States sued in his or her official capacity be

effected by serving both the United States Attorney for the District of Columbia and the Attorney

General of the United States as prescribed by Rule 4(*i*)(1), and also by serving the employee or

officer by sending him or her a copy of the summons and complaint by registered or certified

mail as prescribed by Rule 4(*i*)(2). However, service on a federal government employee sued in

his or her individual capacity requires personal service. *See* Fed. R. Civ. P. 4(e), (*i*)(2)(B);

*Simpkins v. District of Columbia Gov't*, 108 F.3d 366, 369 (D.C. Cir. 1997) (holding that

defendants in *Bivens* actions must be served as individuals pursuant to Rule 4(e)). Personal

service may be effected "by delivering a copy of the summons and of the complaint to the

individual personally or by leaving copies thereof at the individual's dwelling house or usual

place of abode with some person of suitable age and discretion." Fed. R. Civ. P. 4(e)(2).

Alternatively, personal service can be achieved in accordance with District of Columbia law.

Fed. R. Civ. P. 4(e)(1). District of Columbia law allows service of process on an individual by

mail in the manner specified by the District of Columbia Code. D.C. Code § 13-431 (1981)

(authorizing service outside the District of Columbia "by any form of mail addressed to the

person to be served and requiring a signed receipt"); Super. Ct. Civ. R. 4(e)(2) (allowing service

3

of process on individual defendants by first class, certified, or registered mail).  Plaintiffs carry

the burden of establishing that they properly effected service on all the defendants in their

individual capacities pursuant to Rule 4(e).  *Light v. Wolf*, 816 F.2d 746, 751 (D.C. Cir. 1987).

Plaintiffs represent that they served each defendant at his or her office by certified mail,

return receipt requested.  *See* Plaintiffs' Motion to Take Judicial Notice of Facts and Motion to

Enlarge Time to Serve Defendants ¶¶ 9, 12; Plaintiffs' Request for Entry of Default, Ex. A

(certified mail return receipts).[2]  In their view, service by mail is proper because it complies with

District of Columbia law, and, thus, they "properly served Defendants, individually, at their place

of employment."  Memorandum of Points and Authorities in Support of Plaintiffs' Opposition to

Defendants' Motion to Dismiss ("Pls.' Opp'n") ¶ 16.  Plaintiffs argue in the alternative that

because counsel is "duly authorized by the Department of Justice to represent Defendants

individually, Defendants effectively now concede that they have been served in their individual

capacity."  *Id.* ¶ 17.  These arguments are without merit.

Service by mail is a permissible means by which to effect personal service on defendants

in the manner specified by the District of Columbia Code.  Fed. R. Civ. P. 4(e)(1).  Thus, the fact

that the summonses and complaints were mailed to the defendants, whether to their residence or

office addresses, does not constitute personal service unless achieved in the manner prescribed by

District of Columbia law.  And, plaintiffs cannot rely on defendants' actual notice of this

litigation to satisfy the service of process requirements under Rule 4.  *Mid-Continent Wood

Prods., Inc. v. Harris*, 936 F.2d 297, 301 (7th Cir. 1991) (citing *Way v. Mueller Brass Co.*, 840

F.2d 303, 306 (5th Cir. 1988)); *Whitehead v. CBS/Viacom, Inc.*, 221 F.R.D. 1, 3 (D.D.C. 2004)

---

[2]     The signatures on these receipts do not appear to be those of the addressees.

(actual notice of suit cannot cure defective service of process).  "If service is not properly made, the court has no jurisdiction to render a personal judgment against a defendant."  *Moskovits v. Drug Enforcement Admin.*, 774 F. Supp. 649, 652 (D.D.C. 1991) (citing *Sieg v. Karnes*, 693 F.2d 803, 807 (8th Cir. 1982)).  The fact that defendants are represented by counsel from the United States Department of Justice amounts to neither a waiver of service nor a concession that plaintiffs properly effected service of process.  Defendants' motion is filed on behalf of them in their official capacities only, and they expressly preserve any defenses available to them, including a challenge to the sufficiency of service of process upon them in their individual capacities.  Defendants' Reply in Support of Defendants' Motion to Dismiss ("Defs.' Reply") at 2 n.5.  Accordingly, the Court will grant the defendants' Motion to Dismiss on the ground that service of process on them in their individual capacities has not been effected properly.

### B.  Judicial, Prosecutorial, and Legislative Immunity

Defendants argue that they are absolutely immune from suit under the doctrine of judicial, prosecutorial, or legislative immunity.  *See* Defs.' Mem. at 5-13.

### 1.  Judicial Immunity

### a.  Judge Ricardo H. Hinojosa

Plaintiffs name as a defendant The Honorable Ricardo H. Hinojosa, United States District Judge for the Southern District of Texas, in his capacity as Chairman of the United States Sentencing Commission, Compl. ¶ 2, and seek an award of monetary damages against him.  In response, defendants argue that Judge Hinojosa is protected by absolute immunity from a suit for damages.  Defs.' Mem. at 5-7.

5

In general, judges are immune from suit for money damages. *Mireles v. Waco*, 502 U.S. 9 (1991); *Cleavinger v. Saxner*, 474 U.S. 193 (1985); *Butz v. Economou*, 438 U.S. 478 (1978); *Pierson v. Ray*, 386 U.S. 547 (1967); *see Moore v. Motz*, 437 F. Supp. 2d 88, 91 (D.D.C. 2006) (absolute judicial immunity bars *pro se* plaintiff's claims against federal judges stemming from acts taken in their judicial capacities); *Daul v. Meckus*, 897 F. Supp. 606, 610 (D.D.C. 1995) ("[A]dministrative law judges and judicial review officers are entitled to absolute immunity from suit for their judicial acts."), *aff'd per curiam*, 107 F.3d 922 (D.C. Cir. 1996). Absolute judicial immunity provides immunity not only from suit but also from the ultimate imposition of damages, even if a judge acts in bad faith or with malice. *See Mireles v. Waco*, 502 U.S. at 11. "The common law immunity of judges is fully applicable in suits under 42 U.S.C. § 1983 alleging deprivations of constitutional rights." *Clark v. Taylor*, 627 F.2d 284, 287 (D.C. Cir. 1980) (per curiam) (citing *Pierson v. Ray*, 386 U.S. at 553-55). However, a judge is not immune for actions, though judicial in nature, taken in "clear absence of all jurisdiction." *Id.* at 286 (citing *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978)). In determining whether an act is judicial in nature, the relevant inquiry is the nature of the act, not the act itself. *See Stump v. Sparkman*, 435 U.S. at 362. Resolution of a motion filed by a party, for example, "can only be characterized as judicial action." *Clark v. Taylor*, 627 F.2d at 288. On the other hand, a judge acting in a purely administrative capacity does not enjoy absolute immunity. *See, e.g., Forrester v. White*, 484 U.S. 219, 229 (1987) (holding that state court judge "was acting in an administrative capacity when he demoted and discharged" a probation officer and was not absolutely immune from liability for damages under 42 U.S.C. § 1983).

Here, Judge Hinojosa is sued in his capacity as the Chairman of the United States

Sentencing Commission.  The Sentencing Commission is "an independent commission in the

judicial branch of the United States."  28 U.S.C. § 991(a) (2003).  Pursuant to a recent

amendment, "[n]ot more than [three] of the members [of the Sentencing Commission] shall be

Federal judges selected after considering a list of six judges recommended to the President by the

Judicial Conference of the United States."  *Id.*  "Although placed . . . in the Judicial Branch, [the

Sentencing Commission] is not a court and does not exercise judicial power."  *Mistretta v.

United States*, 488 U.S. 361, 384-85 (1989).  Rather,

> [t]he judges serve on the Sentencing Commission not pursuant to
> their status and authority as Article III judges, but solely because of
> their appointment by the President as the [enabling legislation]
> directs.  Such power as these judges wield as Commissioners is not
> judicial power; it is administrative power derived from the enabling
> legislation.

*Id.* at 404.  Thus, Judge Hinojosa, who as Chairman exercises "a wholly administrative role upon

entering into the deliberations of the Commission," *id.*, is not protected by absolute judicial

immunity.

b.  James C. Duff[3]

Plaintiffs also name Leonidas Meacham, former Director of the Administrative Office of

the United States Courts, as a defendant to this action.  *See* Compl. ¶ 2.  Defendants argue that

Mr. Meachum (now James C. Duff), too, is protected by absolute judicial immunity.  Defs.'

Mem. at 5-7.

---

[3]       James C. Duff is the current Director of the Administrative Office for United
States Courts, *see* http://www.uscourts.gov/library/annualreports/2006/profile.html, and he is
therefore substituted for Leonidas Meacham as the proper party defendant pursuant to Fed. R.
Civ. P. 25(d)(1).

In this Circuit, absolute judicial immunity extends to clerks of the court. *Sindram v. Suda*, 986 F.2d 1459, 1460-61 (D.C. Cir. 1993) (per curiam). Therefore, "clerks, like judges, are immune from damage suits for performance of tasks that are an integral part of the judicial process." *Id.* In *Sindram*, the acts about which the plaintiff complained include preparing and disseminating district judges' orders, directing his complaints to the judges, and instituting an order barring his access to the court. *Id.* at 1461. These acts are deemed by the Court of Appeals as not only integral to the judicial process but within the clerks' jurisdiction. *Id.*

The Administrative Office of the United States Courts "do[es] not exercise judicial power in the constitutional sense of deciding cases and controversies, but [shares] the common purpose of providing for the fair and efficient fulfillment of responsibilities that are properly within the province of the Judiciary." *Mistretta v. United States*, 488 U.S. at 389. Mr. Duff's functions, then, do not appear to be judicial in nature, such that he is protected by absolute immunity.

### 2. Prosecutorial Immunity[4]

Plaintiffs also name as defendants to this action Johnny Sutton, United States Attorney for the Western District of Texas, Donald J. DeGabrielle, Jr., the United States Attorney for the Southern District of Texas, Paul K. Charlton, the United States Attorney for the District of Arizona, and Gregory Miller, the United States Attorney for the Northern District of Florida, in addition to Mike A. Battle, the Director of the Justice Department's Executive Office for United

---

[4]    The Court notes that plaintiffs voluntarily dismissed their claims against Paul Charlton and Gregory Miller in both their official and individual capacities. Plaintiffs' Notice of Dismissal ¶¶ 4, 8.

States Attorneys.[5]  Compl. ¶ 2.  Evidently, these individuals are among those who the plaintiffs allege "zealously advocate[d] the continued imposition of the unconstitutionally imposed sentences" during the time period when the federal sentencing guidelines were mandatory. Compl. ¶ 20.  However, plaintiffs neither mention these defendants in the body of the Complaint, nor attribute any specific act to them.

The United States Attorneys are federal prosecutors and as such enjoy absolute immunity from a damages lawsuit predicated on their "initiating a prosecution and [] presenting the [government's] case."  *Imbler v. Pachtman*, 424 U.S. 409, 430-431 (1976); *see Moore v. Valder*, 65 F.3d 189, 193-94 (D.C. Cir. 1995) ("Advocatory conduct protected by absolute immunity 'include[s] the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made.'") (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)), *cert. denied*, 519 U.S. 820 (1996).  The Court therefore concludes that these defendants are protected by absolute prosecutorial immunity.

The Director of the Justice Department's Executive Office for United States Attorneys ("EOUSA")  appears to perform functions that are more administrative than prosecutorial in nature.  According to its website, *see* http://www.usdoj.gov/usao/eousa, the EOUSA acts as a liaison between the Department of Justice and the 93 United States Attorneys Offices throughout the 50 states, the District of Columbia, Guam, the Marianas Islands, Puerto Rico, and the Virgin

---

[5]     Donald J. DeGabrielle, Jr. succeeded Charles Rosenberg as the United States Attorney for the Southern District of Texas, and Mike A. Battle succeeded Donna Bucella as the Director of the Executive Office for United States Attorneys.  *See* Defs.' Reply at 1 n.3-4.  Mr. DeGabrielle and Mr. Battle therefore are substituted as the proper party defendants pursuant to Fed. R. Civ. P. 25(d)(1).

Islands.  Among other things, the EOUSA publishes and maintains the United States Attorneys

Manual, establishes and interprets policies, provides legal advice regarding recusals, allegations

of misconduct, adverse actions, grievances, labor relations, and ethical and conflict of interest

questions, and provides technical, operational, and administrative support to United States

Attorneys Offices.  *See* http://www.usdoj.gov/usao/eousa/mission.html.  These activities do not

appear to involve the initiation of prosecutions or the presentation of the government's cases, and

therefore are not prosecutorial or advocatory activities.  Therefore, the EOUSA's Director is not

protected by absolute prosecutorial immunity.

### 3.  Legislative Immunity

Defendants argue that defendants Sensenbrenner and Apperson, as a Congressman and

former staff member of a House Subcommittee, respectively, enjoy absolute legislative immunity

from suit.  *See* Defs.' Mem. at 11-13.  Notwithstanding the vague allegations made against them

in the complaint, these defendants assert that it is "clear that Congressman Sensenbrenner and

Mr. Apperson's actions were undertaken pursuant to their legislative duties with the U.S. House

of Representatives."  Defs.' Mem. at 13.  In response, plaintiffs dismiss defendants' arguments as

"wholly specious."  Pls.' Opp'n ¶ 28.  They deem defendant Sensenbrenner's actions (and

presumably defendant Apperson's actions at his behest) to be "beyond the scope of his elected

position through intimidation seeking to influence the Courts in a sentencing matter."  *Id.*  The

criminal case to which plaintiffs presumably refer, *see* Compl. ¶ 76, does not appear to involve

any of the plaintiffs to this action.  *See United States v. Rivera*, 411 F.3d 864 (7th Cir. 2005)

(addressing Lissett Rivera's objections to her sentence).  Plaintiffs therefore have no standing to

contest Sensenbrenner's and Apperson's interference in the *Rivera* case as no action of the

defendants can be traced to a letter allegedly designed to influence sentencing in a criminal action against an individual who is a party to this action. *See Navegar, Inc. v. United States*, 103 F.3d 994, 998 (D.C. Cir. 1997) (requiring, among other elements, that plaintiffs' claims be 'fairly traceable' to the challenged act of the defendant).

Moreover, the Speech or Debate Clause of the United States Constitution, U.S. Const. art. I, § 6, cl. 1, "confers on Members of Congress immunity for all actions "within the 'legislative sphere,' even though their conduct, if performed in other than legislative contexts, would in itself be unconstitutional or otherwise contrary to criminal or civil statutes." *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 415 (D.C. Cir. 1995) (quoting *Doe v. McMillan*, 412 U.S. 306, 312-13 (1973) (internal citations omitted)). The provision "protects only those congressional acts properly thought to fall within the legislative function – those 'generally done in a session of the House by one of its Members in relation to the business before it.'" *Id.* (quoting *Kilbourn v. Thompson*, 103 U.S. 168, 204 (1881)). Legislative immunity extends to Congressional staffers so long as their actions fall within the same legislative sphere that protects members of Congress. *See Doe v. McMillan*, 412 U.S. at 312-13 (Congressmen and their aides are protected by Speech or Debate Clause, such that no liability arises from legislative acts such as authorizing an investigation, holding hearings, preparing reports based on materials gathered during hearings, and publishing and distributing such reports); *Gravel v. United States*, 408 U.S. 606, 616-17 (1972); *Walker v. Jones*, 557 F. Supp. 366, 367 (D.D.C. 1983) ("[C]ongressional staff members are immune from suit if their actions would be protected under the Speech and Debate Clause if performed by Congressmen."), *rev'd in part on other grounds*, 733 F.2d 923 (D.C. Cir.), *cert. denied*, 469 U.S. 1036 (1984). A principal purpose of this legislative immunity

11

"is to shield legislators from private civil actions that 'create [] a distraction and force[] Members to divert their time, energy, and attention from their legislative tasks to defend the litigation.'" *MINPECO, S.A. v. Conticommodity Servs., Inc.*, 844 F.2d 856, 859 (D.C. Cir. 1988) (quoting *Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 503 (1975)).

Here, plaintiffs argue that the letter defendant Sensenbrenner sent to the court in the *Rivera* case falls outside the legislative sphere, yet plaintiffs neither describe the letter's contents nor include a copy of the letter in this record. No allegation in the Complaint clearly places the activities of defendants Sensenbrenner and Apperson outside the legislative sphere. Accordingly, the Court concludes that these defendants are absolutely immune from suit.

### C. Sovereign Immunity

Even though some of the named defendants in this case are not protected from suit by judicial or prosecutorial immunity, sovereign immunity bars plaintiffs' claims for damages against them in their official capacities. *See Clark v. Library of Congress*, 750 F.2d 89, 101-02 (D.C. Cir. 1984); *Marshall v. Reno*, 915 F. Supp. 426, 434 (D.D.C. 1996) ("To the extent that the plaintiff seeks damages against the United States or the individual federal defendants in their official capacities, his claims must be dismissed absent a waiver of sovereign immunity."). There being no waiver of sovereign immunity as to defendants Hinojosa, Duff and Battle, the claims against them in their official capacities cannot be maintained.

### D. Denial of Access to the Courts

In vague and general terms, plaintiffs blame defendants collectively for establishing and applying the United States Sentencing Guidelines and for enacting and applying the AEDPA to their detriment. According to plaintiffs, Congress' failure to "include any provision [in the

12

AEDPA] that would allow Plaintiffs an avenue or vehicle to correct a sentence derived from and

pursuant to the unconstitutional mandatory guidelines," Compl. ¶ 19, not only deprives them of

access to the court for any further attempt at correcting their illegal sentences but also

unconstitutionally suspends the writ of habeas corpus entirely.  *See id.* ¶¶ 18, 41.  Now that

plaintiffs' respective convictions are final, they claim that defendants have denied them any

opportunity to challenge convictions and sentences since deemed unconstitutional by the

Supreme Court in *United States v. Booker*, 543 U.S. 220 (2005).[6]  *See* Compl. ¶¶ 18-19, 24-26,

34, 68-69.

Inmates have a constitutional right of access to the courts that is adequate, effective, and

meaningful.  *See Bounds v. Smith*, 430 U.S. 817, 821-22 (1977); *Ex parte Hull*, 312 U.S. 546,

549 (1941).  It is not enough for inmates merely to state that they were denied access.  Rather,

they also must allege actual injuries as a result of the denial by claiming that actionable claims

were rejected, lost, or prevented from being filed.  *See Lewis v. Casey*, 518 U.S. 343, 356 (1996)

(inmate alleging violation of *Bounds* must show actual injury, without which he has no standing

to raise the claim).  In this case, plaintiffs are not denied access to the courts because they have

no actionable legal claim.  Although the AEDPA imposes conditions on the court's authority to

grant habeas relief, it does not suspend the writ of habeas corpus.  *Felker v. Turpin*, 518 U.S.

651, 664 (1996) (holding that AEDPA's restrictions on filing second habeas petitions "do not

amount to a 'suspension' of the writ contrary to Art. I, § 9" of the Constitution); *United States v.*

---

[6]    In *Booker*, the Supreme Court held that the United States Sentencing Guidelines, "if mandatory, would violate a defendant's Sixth Amendment right to have all facts necessary to the imposition of a sentence found by a jury applying the reasonable doubt standard; the Court therefore construed the Guidelines as advisory."  *In re Fashina*, 486 F.3d 1300, 1303 (D.C. Cir. 2007) (citing *Booker*, 543 U.S. at 244-45).

*Ortiz*, 136 F.3d 161, 168 (D.C. Cir. 1998) (summarily dismissing argument that limitations in

AEDPA for filing second or successive § 2255 motions violate the Suspension Clause of the

Constitution). Even if plaintiffs were able to pursue motions to vacate, set aside or correct their

sentences under 28 U.S.C. § 2255, no relief is available to them because the ruling in *Booker*

does not have retroactive application. *See, e.g., In re Zambrano*, 433 F.3d 886, 889 (D.C. Cir.

2006) (denying leave to file second motion under 28 U.S.C. § 2255 because *Booker* does not

apply retroactively to cases on collateral review); *Lloyd v. United States*, 407 F.3d 608, 610 (3d

Cir.) ("All courts of appeals to have considered the issue of whether the rule of law announced in

[*Booker*] applies retroactively to prisoners who were in the initial § 2255 motion stage as of the

date that *Booker* issued have concluded that it does not. We now join those courts."), *cert.*

*denied*, 546 U.S. 916 (2005); *United States v. Bellamy*, 411 F.3d 1182, 1188 (10th Cir. 2005)

("*Booker* does not apply retroactively on collateral review, and [petitioner's] claim may not be

brought in this initial habeas review under 28 U.S.C. § 2255."); *Guzman v. United States*, 404

F.3d 139, 141 (2d Cir.) ("The several courts of appeals that have considered the retroactivity

question have held that *Booker* is not retroactive [and] [w]e agree.") (citations omitted), *cert.*

*denied*, 546 U.S. 1035 (2005); *Varela v. United States*, 400 F.3d 864, 868 (11th Cir.) (per

curiam) ("[W]e conclude that *Booker*'s constitutional rule falls squarely under the category of

new rules of criminal procedure that do not apply retroactively to § 2255 cases on collateral

review."), *cert. denied*, 546 U.S. 924 (2005); *Humphress v. United States*, 398 F.3d 855, 860 (6th

Cir.) ("[W]e conclude that *Booker*'s rule does not apply retroactively in collateral

proceedings[.]"), *cert. denied*, 546 U.S. 885 (2005); *McReynolds v. United States*, 397 F.3d 479,

14

481 (7th Cir.) ("*Booker* does not apply retroactively to criminal cases that became final before its release on January 12, 2005."), *cert. denied*, 545 U.S. 1110 (2005).

### III.   CONCLUSION

For the reasons stated above, the Court concludes that service of process on all defendants in their individual capacities was insufficient, that defendants Gonzales, Sensenbrenner, Apperson, Sutton, Charlton, Miller and DeGabrielle are absolutely immune from suit, and that sovereign immunity bars any claims against defendants Hinojosa, Duff and Battle in their official capacities.  Moreover, plaintiffs cannot prevail on their claim of denial of access to the courts because they have no underlying actionable legal claim.  Accordingly, the Court will grant defendants' motion to dismiss, and will deny plaintiffs' requests for class certification.  In addition, the Court will deny plaintiff Kaemmerling's motion for release on bond pending resolution of this action.  An Order consistent with this Memorandum Opinion will be issued separately.

                                        _____/s/_____
                                        REGGIE B. WALTON
                                        United States District Judge

Date: September 29, 2007